**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

**Civil Action No. 1:15-cv-00567-PAB-MJW**

MARK EDWARDS, as Personal Representative of the
Estate of RONALD BRAMLAGE, deceased;
Estate of REBECCA BRAMLAGE, deceased;
Estate of BRANDON BRAMLAGE, deceased;
Estate of BOSTON BRAMLAGE, deceased;
Estate of BEAU BRAMLAGE, deceased; and
Estate of ROXANNE BRAMLAGE, deceased,

      Plaintiff,

v.

PILATUS AIRCRAFT, LTD., a/k/a Pilatus Flugzeugwerke
Aktiengesellschaft, a Swiss Company doing business in
the United States;

PILATUS BUSINESS AIRCRAFT, LTD.,
a Colorado Corporation;

HONEYWELL INTERNATIONAL, INC., individually and as
Successor to AlliedSignal Aerospace, Inc. and Bendix/King,
a Delaware Corporation;

GLENAIR, INC., a California Corporation;

      Defendants.

---

**PROTECTIVE ORDER GOVERNING
PRESERVATION OF AIRCRAFT WRECKAGE[1]
(Docket No. 61-1)**

---

In order to facilitate discovery and preserve the wreckage evidence, the Defendants move

this Court for entry of the following Protective Order Governing Preservation of Aircraft

---

[1] This Protective Order includes the position of the defendants in *Mark Edwards, etc., v. Leach International, et. al. United States District Court, District of Delaware (Wilmington), Case No. 1:15-CV-00321-LPS*, which is a companion case evolving from the aircraft accident that is the subject of this litigation.

Wreckage.  The Court, being fully advised and having determined that good cause exists for the entry of this Protective Order Governing Preservation of Aircraft Wreckage, therefore **GRANTS** the Defendants' motion.  IT IS HEREBY ORDERED as follows:

### PRELIMINARY RECITAL

1.      This litigation arises out of the June 7, 2012 crash of a Pilatus PC-12/47 aircraft, Registration No. N950KA ("Aircraft") in Polk County, Florida.    The parties hereto request that a protective order be entered preserving the subject aircraft wreckage, including but not limited to (1) the aircraft, (2) its engine, (3) the **(currently)** twelve (12) boxes containing components and other materials from inside the aircraft, as identified in Attachment A to this Protective Order, (4) any other of its components, and (5) all other pieces of the aircraft (collectively "the Aircraft Wreckage") in their current condition.  This Order requires that the Aircraft Wreckage not be destroyed and that counsel for Plaintiff shall retain authority over the wreckage but is not responsible for its security, loss, theft or damage.  The wreckage shall be available for the use, examination and analysis of the parties to this litigation, and in the related case of *Edwards v. Leach International Corp., et al.*, Civil Action No. 1:15-CV-00321-LPS (D. Del.) (hereinafter the "Delaware Action"), and any potential future litigation.

2.      The Court recognizes that it does not have jurisdiction over Leach International Corporation and DRI Relays, Inc., the defendants in the Delaware Action. Nonetheless, the terms of this Order include those entities in order to direct how the parties in this case will be required to interact with the defendants in the Delaware Action. Moreover, the Court is advised that the defendants in the Delaware Action have agreed—subject to being given notice, an opportunity to be heard, and a right to petition this Court with respect to this Order—to voluntarily abide by this Court's rulings issued pursuant to this Order

100283281.2

3.      The Aircraft Wreckage currently remains under the custody, authority and control of the insurer and is currently maintained in a storage garage/hangar at Quality Aircraft Salvage, 12215 Mattioda Road, Groveland, Florida 34736. The engine, propeller, wreckage parts are stored separately. A number of other components are stored separately in a secured locker inside that storage garage/hangar at Quality Aircraft Salvage under the exclusive control of the salvager. As stated in paragraph one, above, the  Aircraft Wreckage shall be kept and preserved in its current condition under the authority (but not responsibility) of the Plaintiff's counsel, with complete chains of custody and without any modifications or alterations to same, subject to the access and inspection rights as further detailed below.

## AIRCRAFT WRECKAGE STORAGE AND ACCESS

4.      Unless otherwise agreed to in writing by the parties in this civil action and the defendants in the Delaware Action (hereinafter collectively the "Parties" and individually a "Party") or approved by the Court, and until termination of this litigation, the Aircraft Wreckage will be kept at its current location in storage.

5.      No person shall examine, inspect, modify, alter, destroy, damage, test, disassemble, clean, connect to a power source, download data, send test signals or otherwise view or have access to the Aircraft Wreckage or any component part thereof at any time except as specifically provided for herein, or by separate Order of this Court.

## VISUAL, NON-DESTRUCTIVE EXAMINATION

6.      The Parties agree that, upon twenty-one (21) calendar days' written notice to all other Parties, any Party may conduct one or more visual, non-destructive examination(s) (including photographs and dimensional measurements) which do not modify or alter the Aircraft Wreckage, or require disassembly, reassembly, cleaning, or other actions which may

change the condition of the Aircraft Wreckage.  Each Party, or its appointees, experts or agents, shall be entitled to have representatives present during the examination including any off-site examination as set forth in paragraph 10, below.  The inspecting Party and all attendees will be required to complete a sign-in sheet identical to the form customarily required for access to a wreckage storage facility.  Each Party shall bear its own cost of performing the examination.  None of the Parties shall be restricted in the number of times they may examine the Aircraft Wreckage, upon reasonable notice to the others.   However, if repetitive notices become unreasonably burdensome and unreasonably costly, the Parties reserve the right to ask the Court to limit the number of noticed inspections.  Counsel shall make good faith efforts to resolve time conflicts so as to permit any inspection proposed by any Party to take place with the attendance of other Parties who desire to be present. In the event that counsel cannot resolve time conflicts after meeting and conferring in good faith, the matter can be submitted to the Court for a determination.

<u>**LIMITATION AS TO DESTRUCTIVE INSPECTION OR DISASSEMBLY**</u>

7.      Neither a Party nor any other person shall engage in testing or disassembly of the Aircraft Wreckage, deemed by any Party to be destructive or potentially destructive ("destructive testing"), or engage in any other action that alters or modifies any of the Aircraft Wreckage or its relationship with other components, without thirty (30) calendar days prior written notice to all Parties, as provided in this paragraph, and/or pursuant to written consent of the Parties or an order by the Court.  The Parties shall make good faith efforts to agree upon the scheduling and details of the inspection.  Any Party requesting an inspection, testing (destructive or otherwise) or disassembly of any part or component shall first submit a detailed protocol for review by the Parties.  An adequate opportunity shall be given for the Parties to have experts or representatives

present to witness, document, photograph, and videotape such inspection, testing or disassembly. In the event that Parties cannot agree to a protocol, after meeting and conferring in good faith, the matter can be submitted to the Court for a determination.  This, or any other submission to the Court pursuant to this Protective Order, shall be served on counsel for the defendants in the Delaware Action at the same time as it is filed with the Court. Any objections to destructive testing, for which notice has been given in compliance with this paragraph, shall be made in writing within fifteen (15) calendar days of the day of the service of such notice, and shall state the particular portions of the protocol that are objected to and the reasons for each objection. Counsel for all Parties shall endeavor to resolve such objections and to agree on an acceptable manner by which such destructive testing might proceed.  If such resolution and agreement cannot be reached, the proposed examination shall not go forward, and the Party seeking it may ask the Court to compel the proposed examination and to resolve any questions concerning the types of inspections, tests, disassemblies, and examinations to be conducted or the circumstances under which they shall be conducted.  Should such a motion be made, all inspections, tests, disassemblies, and examinations shall be further postponed until receipt of a ruling from the Court or withdrawal or abandonment of the motion.

8.    As the Parties are encouraged to maintain oral dialogue and attempt to work out agreements on discovery issues, particularly at inspections where both attorneys and experts are present, and because all involved desire to avoid incurring excess litigation expenses, nothing herein shall prevent the Parties from agreeing to any particular testing or disassembly procedure, or modification of a previously agreed upon testing or disassembly, at the time of, or during an inspection, as long as all of the Parties agree, which agreement shall not unreasonably be withheld.

100283281.2

9.      If the procedures employed during the inspection of the Aircraft Wreckage do not conform with the protocol, and a representative of a Party deems in good faith that the inspection may alter or destroy physical evidence, or a Party believes that it desires further expert consultation before proceeding, such Party or representative shall have the right to terminate the procedure of the examination and inspection of the Aircraft Wreckage that may alter or destroy physical evidence; however, the balance of the inspection of the Aircraft Wreckage that is consistent with the protocol to which no objection has been asserted under the provisions of this paragraph can proceed to completion (or be conducted/performed).  If the procedures employed during the examination conform to the protocol, a representative of a Party may not object for the first time to those procedures during the examination.  Termination of an inspection by a Party under the provisions of this paragraph does not preclude any other Party from moving for reimbursement of **reasonable costs, to be determined by the Court,** should the Court determine that the termination of that examination was unreasonable.

**INSPECTION OF PART OR COMPONENT AT ANY OTHER LOCATION**

10.      To the extent any component is removed or separated from the Aircraft Wreckage and a Party wishes to move the component to a different location for further inspection or analysis, that entity may do so only upon giving at least twenty-one (21) calendar days written notice to all Parties, including protocols for preparing and transferring any such component and for the proposed inspection at the off-site facility, or otherwise as approved by the Court or agreed to by all Parties.  The Party conducting any off-site inspection shall be responsible for any loss, destruction or damages to the component while in transit and while in the Party's or its agents' possession.  Any Party wishing to utilize the facility/laboratory for its own purpose and not solely as an observer shall pay a proportionate share of the cost of the facility/laboratory's

fees.  Upon proper notice by the removing Party of its intent to remove a component for off-site inspection, the non-removing Parties shall have the right to photograph, videotape or otherwise document the condition of the component to be removed **subject to** the same rights to notice of further inspection, attendance and termination as for any other inspection as elaborated in paragraphs 7, 8, and 9.  The removing Party shall be responsible for the safekeeping of the component while in the possession of third parties, and shall ensure each removed component is not disassembled, altered, modified, cleaned, or subjected to destructive testing.  The removing Party shall maintain chain of custody documentation with identification and signature by all persons and/or entities in possession or control of each removed component.  This documentation, which identifies and has been signed by the specific persons and/or entities who have had possession or control of each removed component on behalf of a Party, shall be kept by counsel for that Party and shall be provided to all counsel in this case and in the Delaware Action.  Any component removed from the storage site for any reason will be returned promptly after the inspection of the component, and no later than thirty (30) calendar days after the removal, and in no event less than sixty (60) calendar days prior to trial, unless agreed to by the Parties or by order of the Court.

11.     Each agent or expert who examines the subject component shall be informed of this Order, and shall acknowledge and agree to be bound by its terms, and in any event, shall be so bound whether or not expressly agreed.

12.     Failure by any Party or any of their representatives to comply with the terms of this Order shall subject the non-complying Party to appropriate sanctions and remedies pursuant to applicable law.

13.     By agreeing to abide by rulings of this Court, receiving notices, being heard in this Court, or petitioning this Court with respect to this Protective Order, the defendants in the Delaware Action do not submit to jurisdiction of this Court, submit to jurisdiction in the State of Colorado, or waive any defenses.

14.     Any documentation which is required to be maintained by anyone pursuant to the terms of this Order, may be destroyed, or disposed of in any manner at the conclusion of this litigation, including but not limited to the exhaustion of all possible appeals and/or settlement by all Parties.

**APPROVED and SO ORDERED, this 22nd day of September, 2015.**

*/s/ Michael J. Watanabe*
**United States Magistrate Judge**
**District of Colorado**

100283281.2